# Exhibit A

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PASCO COUNTY, FLORIDA
CIVIL DIVISION

FREDERICK ANDERSON,

    Plaintiff,

v.

    Case No.:

TRANS UNION LLC, and
BANK OF AMERICA CORPORATION

    Defendants.

_____/

## COMPLAINT

**COMES NOW**, Plaintiff, Frederick Anderson (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby files this Complaint against Defendants, Trans Union, LLC, (hereinafter, "Trans Union"), and Bank of America Corporation (hereinafter, "BOA"). In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1.    This is an action for damages that exceed $50,000.00, exclusive of fees and costs brought by an individual for damages.

2.    The Plaintiff claims the Defendants violated the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq.* (hereinafter, the "**FCRA**"), specifically, Trans Union failed to establish, maintain, and follow reasonable procedures to assure maximum possible accuracy in the preparation of credit reports and credit files published by Trans Union when it included a BOA tradeline it knew was discharged in bankruptcy as actively owed with a significant balance. Additionally, both Defendants failed to conduct reasonable investigations into the Plaintiff's valid consumer disputes of the errant credit reporting.

1

## JURISDICTION, VENUE & PARTIES

3. Jurisdiction of this Court arises under FCRA, 15 U.S.C. § 1681 *et seq.* and §26.012, Fla. Stat.

4. Defendants are subject to the provisions of the FCRA and to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat.

5. Both Defendants conduct substantial business within the state of Florida.

6. Both Defendants conduct business or otherwise interact with thousands of Florida consumers each month.

7. Venue is proper in Pasco County, Florida because the acts complained of were committed and/or caused by the Defendant within Pasco County.

8. At all material times herein, Plaintiff is a natural person residing in Pasco County, Florida.

9. Plaintiff is therefore a "consumer" as defined by the FCRA, Section 1681a(c), because he is a natural individual located in Pasco County, Florida.

10. Trans Union is a Delaware limited liability company, with a principal business address of 555 West Adams Street, Chicago, IL 60661.

11. Trans Union is registered to conduct business in the State of Florida, where its registered agent is, **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301**.

12. Trans Union is a "credit reporting agency" within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and use various means of interstate commerce for the purpose of preparing or furnishing consumer

reports, specifically including mail and telephone communications.

13. BOA is a Delaware corporation whose Florida registered agent is **CT Corporation Systems, 1200 South Pine Island Rd., Plantation, FL 33324**.

14. BOA is a furnisher of information to multiple Consumer Reporting Agencies ("CRAs"), including Defendant Trans Union, in that it regularly reports account data on both consumer and commercial business credit lines to CRAs like Trans Union.

## FACTUAL ALLEGATIONS

15. At all material times herein, Trans Union incorporated information concerning a consumer Mastercard® credit card account furnished by BOA with an account number ending with xxxx4514 (hereinafter, the "Account") into the Plaintiff's credit file.

16. On or about August 8, 2018, Plaintiff filed a voluntary Chapter 7 bankruptcy case in the Middle District of Florida, Tampa Division, identified by case number 8:18-bk-07069-CPM (hereinafter, "Bankruptcy Case").

17. Plaintiff listed BOA in his Bankruptcy Case petition and bankruptcy schedules as an unsecured creditor with respect to the Account.

18. On or about November 29, 2018, the United States Bankruptcy Court entered an order of discharge (hereinafter, "Discharge Order") in Plaintiff's Bankruptcy Case.

19. In March of 2021, Plaintiff noticed some of his accounts, including the Account, were reporting as having actively having a balance owed, despite the discharge of debt through the Bankruptcy Case several years prior.

20. Plaintiff disputed the erroneous accounts, and the matter was corrected by both Trans Union and BOA in response.

21. Around March 2023, Plaintiff made several credit applications and was declined in

3

each instance.

22.     On or about March 14, 2023, Plaintiff obtained a copy of his consumer credit disclosure report from Trans Union.

23.     Notably, Trans Union reported Plaintiff's Bankruptcy Case in the public records section of Plaintiff's consumer credit disclosure, as well as in reports it sold about Plaintiff.

24.     Trans Union also reported *at least* six tradeline accounts included in Plaintiff's Bankruptcy Case as "Incl. in Bankruptcy."

25.     However, on Plaintiff's consumer disclosure as well as on reports sold about Plaintiff to third parties, Trans Union reported the BOA account as having a balance of $1,505 actively owed, that payment was severely past due and charged-off, and failed disclose the $1,505 balance on the Account was discharged through Plaintiff's Bankruptcy Case.

26.     At no point did Trans Union provide Plaintiff notice it was reinserting previously-deleted information back into Plaintiff's credit file, as required by the FCRA at § 1681i(a)(5)(B)(ii) and § 1681i(a)(5)(B)(iii)(I).

27.     Trans Union did not provide the business name and address of the entity associated with the reinsertion of the previously-deleted information, as required by the FCRA at 1681i(a)(5)(B)(iii)(II).

28.     Trans Union failed to provide written notice to Plaintiff he had the right to have a statement of dispute included in his file, i.e., that he disputed the $1,505 was owed to BOA, as required by the FCRA at § 1681i(a)(5)(B)(iii)(III).

29.     Trans Union reported the BOA Account was opened in 2016.

30.     BOA reported the "date of first delinquency" ("DOFD") was July 2017, meaning this was the date the Account first went delinquent without being brought current again.

4

31. Therefore, Trans Union clearly knew the establishment of the BOA Account *preceded* the filing of Plaintiff's Bankruptcy Case and had been reported delinquent by BOA well prior to the Bankruptcy Case, and thus should report a $0 balance and note it was discharged through bankruptcy.

32. Additionally, both Defendants had responded to a dispute in 2021 about the account being inaccurately reported with a balance owed.

33. Therefore, the inaccuracy in the Plaintiff's credit file was objectively and readily verifiable. Any investigating person or entity could have simply check the bankrutpcy court documents, which are publicly available.

34. Indeed, even Trans Unions own internal records revealed the disputed inaccuracy to be objectively readily verifiable.

35. In March 2023, Plaintiff sent in a dispute letter to Trans Union regarding the discharged account reporting instead as charged-off with an active balance.

36. Trans Union received the dispute at its offices in Illinois, where it scanned the dispute and electronically delivered it to its overseas dispute processing contractors.

37. Rather than investigate the crux of Plaintiff's dispute, something Trans Union could have done on its own as the existence of Plaintiff's bankruptcy petition was objectively and readily verifiable (and even contained in Trans Union's own files), Trans Union simply hired an internationally-based subcontractor to relay the dispute information to co-Defendant BOA.

38. At no point did Trans Union's agent conduct any meaningful or material investigation.

39. Trans Union's agent did not conduct any investigative analysis into the details and merit of the dispute. Instead, Trans Union utilized a process where it shifts the entire investigative

5

burden on to a data furnisher, in this case BOA.

40. The purpose of this burden shifting is the reduce costs in the search of financial profit.

41. Trans Unions agent spent less than 30 minutes processing the dispute.

42. Trans Union's agent spent less than 15 minutes processing the dispute.

43. Trans Union's agent spent less than 5 minutes processing the dispute.

44. Trans Union sent BOA an *Automated Consumer Dispute Verification* Request ("ACDV") through a system known as e-OSCAR, requesting that BOA make a reasonable investigation into the dispute.

45. BOA quickly returned the ACDV, electronically checking a box its reported information was "verified as accurate."

46. BOA provided no evidence or other information to Trans Union suggesting the Account was not included in a bankruptcy discharge.

47. The determination as to if the Account was discharged in bankruptcy was readily and objectively verifiable by BOA as well, especially considering it received notice from the Bankruptcy Court of the petition and discharge, and had even previously reported the account status as "included in bankruptcy."

48. The basic relay of dispute and perfunctory ACDV response by BOA constituted the entirety of Trans Union's "reinvestigation."

49. At no point did Trans Union actually check the bankruptcy court documents or even its prior reporting records.

50. Trans Union misrepresented to the Plaintiff it had investigated, and further stated that no change would be made to his credit file.

6

51. Plaintiff obtained his Trans Union consumer disclosure again on April 27, 2023, and the account was still reporting as a charge-off with a $1,505 balance actively owed.

52. Plaintiff disputed the account again in July 2023.

53. Trans Union once again scanned the dispute and electronically sent it to its overseas contractors, who then initiated another ACDV to BOA.

54. BOA quickly returned the second ACDV, once again clicking a box on an electronic form its reported information about a $1,505 balance still being owed as of July 2023 was "verified as accurate."

55. A third dispute in September 2023, with Plaintiff specifically referencing the bankruptcy case number and providing additional information which made it even easier for Trans Union to objectively verify the inaccuracy notated in the Plaintiff's dispute.

56. This third dispute once again proved fruitless. The inaccurate information was once again mistakenly confirmed as accurate by both Trans Union and BOA.

57. Increasingly frustrated, Plaintiff submitted another dispute in April 2024, this time including screenshots of the publicly available documents of his bankruptcy case which both Trans Union and BOA could have easily checked themselves.

58. Indeed, BOA had already received copies of these documents.

59. This time, the inaccurate information was deleted.

60. This demonstrates that the Defendants failed to conduct a reasonable investigation or reinvestigation on the Plaintiff's prior disputes.

61. However, prior to the deletion in April 2024, Trans Union sold a significant number of reports to Plaintiff's creditors, and potential creditors, all of which contained the false and defamatory BOA tradeline.

62. This inaccurate information adversely impacted Plaintiff's credit scores and ability to obtain new credit, as it appeared he had filed bankruptcy and racked up new, "unpaid" debt *after* bankruptcy.

63. On its face, the inclusion of an unsecured consumer credit card balance incurred *prior* to consumer filing bankruptcy is unreasonable, absent the creditor reporting a Consumer Information Indicator Metro code of "R" (Chapter 7 Bankruptcy, reaffirmation of debt).

64. When adding to this equation that Trans Union deleted and then reinserted this information (without legally-required notice) in 2023, and the fact the corroborating evidence showing this reporting about Plaintiff was erroneous was contained in Trans Union own credit file on Plaintiff, and the fact numerous disputes resulted in verification of obviously-false information, it is readily apparent Trans Union' fails to utilize reasonable procedures to ensure maximum possible accuracy in the reports it sold concerning Plaintiff.

65. Likewise, BOA failed to conduct anything even remotely close to a reasonable investigation as BOA had received notices from the Bankruptcy Court concerning Plaintiff's petition and subsequent discharge of debt, and, had it lost or misplaced these notices, could have easily checked public records and/or Plaintiff's credit report and quickly determined the Account balance was, in fact, discharged in 2018.

66. The fact Trans Union and BOA were able to determine BOA's information could not be verified as accurate upon Plaintiff's forth dispute tends to establish their first three disputes were unreasonable. See, e.g., *Ponder v. Ocwen Loan Serv., LLC*, 2018 WL 4474635 (N.D. Ga. July 30, 2018) (disputes over the same factual issue with different outcomes can plausibly establish unreasonable procedures).

67. The only difference between the third and fourth dispute was the inclusion of

screenshots of the bankruptcy court documents into the dispute letter itself.

68. Logically, this reveals the Defendants never bothered to actually examine the publicly available bankruptcy documents (as well as information on Plaintiff's own Trans Union report) referenced in the other three dispute letters.

69. The Defendants failed to conduct reasonable investigations into Plaintiff's disputes with a reckless disregard for their duties under the FCRA and the damage that such a disregard could cause.

70. The inaccurate information was disseminated by Trans Union to many third parties, until April 2024.

71. The inaccurate information negatively impacted the Plaintiff's credit scores and reputation by misrepresenting the amount of debt he owed.

72. The inaccurate information also negatively impacted the Plaintiff's credit scores and reputation by misrepresenting the amount of severely delinquent debt he owed.

73. Because the Account was a revolving line of credit showing a credit limit of $1,500 and a balance owed of $1,505 (e.g., 101% credit utilization), the presence of the Account as a purported unpaid obligation had drastic and severe effect to Plaintiff's credit scores.

74. FICO® credit scores, the most commonly-used credit scores in the nation, heavily consider credit utilization when computing a consumer's score, with this factor alone making up roughly 35% of the consumer's overall score.

75. No other charged-off credit card or other revolving account with high credit utilization appeared on Plaintiff's credit reports.

76. Plaintiff attempted to purchase a jet-ski, and is believed to have been denied due to a report furnished by Trans Union, containing BOA tradeline with a false $1,505 balance.

9

77. Plaintiff also sought pre-approval for a home loan guaranteed through the Federal Housing Administration ("FHA"), which is also believed to have been negatively impacted by reports furnished by Trans Union containing the false BOA tradeline.

78. Trans Union also furnished reports to Synchrony Bank and Citibank, both of which contained the false and defamatory BOA information.

79. Plaintiff believes landlords have also received and responded negatively to the inaccurate credit information, as he has had greater difficulty obtaining rental housing since the issue occurred.

80. Plaintiff suffered damage to his reputation as a result of Defendants' conduct, as well as other economic and non-economic damages.

81. As a result of the Defendants' conduct, Plaintiff suffered emotion distress in various forms. He has suffered anxiety, inconvenience, frustration, annoyance, fear, and hopelessness.

82. Despite enduring the bankruptcy process -- which is designed and intended to give consumers like the Plaintiff a fresh start -- Mr. Anderson has been left fearing the Account will haunt him forever.

83. Mr. Anderson has been denied the benefit of his rights under the Bankruptcy laws.

84. Mr. Anderson has wasted a significant and material amount of time dealing with the Defendants' misconduct.

85. Since disputing the debt multiple times frequently did not fix the issue, and Mr. Anderson is worried that at any moment, the inaccuracy will return, as it has in the past.

86. Plaintiff retained undersigned law firm for the purpose of pursuing this matter against Defendant, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

10

## COUNT I:
## TRANS UNION'S WILLFUL VIOLATION OF 15 U.S.C. § 1681e(b)

87. Plaintiff re-alleges Paragraphs 1 through 86 as if fully restated herein.

88. Defendant failed to follow reasonable procedures to ensure maximum possible accuracy by allowing a non-secured bank debt which had a opening date and delinquency date predating a bankruptcy it was also aware of to appear on a consumer's credit report.

89. Trans Union could have adopted a procedure requiring the data furnisher to provide a copy of the discharge paperwork or a reaffirmation of debt prior to accepting the reporting as a way of preventing this type of accuracy from occurring.

90. Instead, Trans Union had not such procedures in place.

91. Trans Union also failed to utilize procedures which could have blocked a tradeline such as the Account from re-appearing with the same inaccuracy in 2023 after it had already been disputed and corrected in 2021.

92. Mr. Anderson is not the first consumer who has had to dispute a discharged debt inaccurately reporting as owed to Trans Union.

93. The Defendant failed to uphold its duty to utilize reasonable procedures to ensure maximum possible accuracy in consumer reports it sold about Mr. Anderson with a willful or reckless disregard for compliance. This willful or reckless disregard is evidenced by the history of non-compliance and the patent inaccuracy of the account based on the information in Trans Union's possession and control at the time.

94. Trans Union's misconduct was a direct and proximate cause of, as well as a substantial factor in, the injuries, damages, and harm to Plaintiff.

95. Accordingly, pursuant to 15 U.S.C. § 1681n, Trans Union is liable to the Plaintiff for the greater of his actual damages and statutory damages of up to $1,000 for *each occurrence*,

as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court to enter judgment against Trans Union for:

a. The greater of statutory damages of $1,000 per incident or his actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d. Such other relief that this Court deems just and proper.

## COUNT II:
## TRANS UNION'S NEGLIGENT VIOLATION OF 15 U.S.C. § 1681e(b)

96. Plaintiff re-alleges Paragraphs 1 through 86 as if fully restated herein.

97. Defendant failed to follow reasonable procedures to ensure maximum possible accuracy by allowing a non-secured bank debt which had an opening date and delinquency date predating a bankruptcy it was also aware of to appear on a consumer's credit report.

98. Trans Union could have adopted a procedure requiring the data furnisher to provide a copy of the discharge paperwork or a reaffirmation of debt prior to accepting the reporting as a way of preventing this type of accuracy from occurring.

99. Instead, Trans Union had not such procedures in place.

100. Trans Union also failed to utilize procedures which could have blocked a tradeline such as the Account from re-appearing with the same inaccuracy in 2023 after it had already been disputed and corrected in 2021.

101. Mr. Anderson is not the first consumer who has had to dispute a discharged debt inaccurately reporting as owed to Trans Union.

12

102. The Defendant negligently failed to uphold its duty to utilize reasonable procedures to ensure maximum possible accuracy in consumer reports it sold about Mr. Anderson.

103. Trans Union's misconduct was a direct and proximate cause of, as well as a substantial factor in, the injuries, damages, and harm to Plaintiff.

104. Accordingly, pursuant to 15 U.S.C. § 1681o, Trans Union is liable to the Plaintiff for actual damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court to enter judgment against Trans Union for:

a. Actual damages under 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and

c. Such other relief that this Court deems just and proper.

## COUNT III:
### TRANS UNION'S WILLFUL VIOLATION OF 15 U.S.C. § 1681i(a)(1)(A)

105. Plaintiff re-alleges Paragraphs 1 through 86 as if fully restated herein.

106. Trans Union violated 15 U.S.C. § 1681i(a)(1)(A) when it failed to conduct a reasonable investigation into at least three separate disputes. Trans Union failed to examine the bankruptcy case it knew about, failed to compare the dates of the Account to the other discharged accounts it knew of, and failed to realize it has previously fixed this same inaccuracy back in 2021.

107. Trans Union's disputes failed to conduct any investigation at all.

108. Trans Union refused to conduct a reasonable investigation in response to Mr. Anderson's disputes as required by the FCRA. This willful or reckless disregard is evidenced by the history of non-compliance and the patent validity of the dispute based on the information in Trans Union's possession and control at the time or which was publicly available.

13

109. Trans Union's misconduct was a direct and proximate cause of, as well as a substantial factor in, the injuries, damages, and harm to Plaintiff.

110. Accordingly, pursuant to 15 U.S.C. § 1681n, Trans Union is liable to the Plaintiff for the greater of his actual damages and statutory damages of up to $1,000 for *each occurrence*, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court to enter judgment against Trans Union for:

a. The greater of statutory damages of $1,000 per incident or his actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d. Such other relief that this Court deems just and proper.

## COUNT IV:
## TRANS UNION'S NEGLIGENT VIOLATION OF 15 U.S.C. § 1681i(a)(1)(A)

111. Plaintiff re-alleges Paragraphs 1 through 86 as if fully restated herein.

112. Trans Union violated 15 U.S.C. § 1681i(a)(1)(A) when it failed to conduct a reasonable investigation into at least three separate disputes. Trans Union failed to examine the bankruptcy case it knew about, failed to compare the dates of the Account to the other discharged accounts it knew of, and failed to realize it has previously fixed this same inaccuracy back in 2021.

113. Trans Union's disputes failed to conduct any investigation at all.

114. Trans Union refused to conduct a reasonable investigation in response to Mr. Anderson's disputes as required by the FCRA. At minimum, Trans Union acted with negligence regarding its investigations.

115. Trans Union's misconduct was a direct and proximate cause of, as well as a substantial factor in, the injuries, damages, and harm to Plaintiff.

116. Accordingly, pursuant to 15 U.S.C. § 1681o, Trans Union is liable to the Plaintiff for actual damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court to enter judgment against Trans Union for:

a. Actual damages under 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and

c. Such other relief that this Court deems just and proper.

d. Actual damages under 15 U.S.C. § 1681o(a)(1);

e. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and

f. Such other relief that this Court deems just and proper.

## COUNT V:
## BOA'S WILLFUL VIOLATION OF 15 U.S.C. § 1681s-2(b)

117. Plaintiff re-alleges Paragraphs 1 through 86 as if fully restated herein.

118. BOA violated 15 U.S.C. § 1681s-2(b) when it failed to conduct a reasonable investigation into at least three separate disputes. BOA failed to examine the bankruptcy case it knew about, failed to compare the disputed information to its own records, and failed to realize it has previously fixed this same inaccuracy back in 2021.

119. BOA's disputes failed to conduct any investigation at all.

120. BOA refused to conduct a reasonable investigation in response to Mr. Anderson's disputes as required by the FCRA. This willful or reckless disregard is evidenced by the history of

15

non-compliance and the patent validity of the dispute based on the information in BOA's possession and control at the time or which was publicly available.

121. BOA's misconduct was a direct and proximate cause of, as well as a substantial factor in, the injuries, damages, and harm to Plaintiff.

122. Accordingly, pursuant to 15 U.S.C. § 1681n, BOA is liable to the Plaintiff for the greater of his actual damages and statutory damages of up to $1,000 for *each occurrence*, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court to enter judgment against BOA for:

a. The greater of statutory damages of $1,000 per incident or his actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d. Such other relief that this Court deems just and proper.

## COUNT VI:
### BOA'S NEGLIGENT VIOLATION OF 15 U.S.C. § 1681s-2(b)

123. Plaintiff re-alleges Paragraphs 1 through 86 as if fully restated herein.

124. BOA violated 15 U.S.C. § 1681s-2(b) when it failed to conduct a reasonable investigation into at least three separate disputes. BOA failed to examine the bankruptcy case it knew about, failed to compare the disputed information to its own records, and failed to realize it has previously fixed this same inaccuracy back in 2021.

125. BOA's disputes failed to conduct any investigation at all.

126. BOA refused to conduct a reasonable investigation in response to Mr. Anderson's

disputes as required by the FCRA. At minimum, BOA acted with negligence regarding its investigations.

127. BOA's misconduct was a direct and proximate cause of, as well as a substantial factor in, the injuries, damages, and harm to Plaintiff.

128. Accordingly, pursuant to 15 U.S.C. § 1681o, BOA is liable to the Plaintiff for actual damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court to enter judgment against BOA for:

a. Actual damages under 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and

c. Such other relief that this Court deems just and proper.

## COUNT VII:
**TRANS UNION'S WILLFUL VIOLATION OF 15 U.S.C. § 1681i(a)(5)(B)(ii) and 1681i(a)(5)(B)(iii)(I)**

129. Plaintiff re-alleges Paragraphs 1 through 86 as if fully restated herein.

130. Trans Union violated 15 U.S.C. § 1681i(a)(5)(B)(ii) and 1681i(a)(5)(B)(iii)(I) when it failed to provide written notice that it was reinserting previously-deleted information into Plaintiff's credit file, to wit, that $1,505 was owed on the BOA Account.

131. Trans Union's misconduct was a direct and proximate cause of, as well as a substantial factor in, the injuries, damages, and harm to Plaintiff.

132. Accordingly, pursuant to 15 U.S.C. § 1681n, Trans Union is liable to the Plaintiff for the greater of his actual damages and statutory damages of up to $1,000 for each occurrence, as well as punitive damages, reasonable attorney's fees, and costs.

17

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment against Trans Union for:

a. The greater of statutory damages of $1,000 per incident or his actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d. Such other relief that this Court deems just and proper.

**COUNT VIII:**
**TRANS UNION'S WILLFUL VIOLATION OF 15 U.S.C. § 1681i(a)(5)(B)(ii) and 1681i(a)(5)(B)(iii)(I)**

133. Plaintiff re-alleges Paragraphs 1 through 86 as if fully restated herein.

134. Trans Union violated 15 U.S.C. § 1681i(a)(5)(B)(ii) and 1681i(a)(5)(B)(iii)(I) when it failed to provide written notice that it was reinserting previously-deleted information into Plaintiff's credit file, to wit, that $1,505 was owed on the BOA Account.

135. Trans Union's misconduct was a direct and proximate cause of, as well as a substantial factor in, the injuries, damages, and harm to Plaintiff.

136. Accordingly, pursuant to 15 U.S.C. § 1681o, Trans Union is liable to the Plaintiff for actual damages, reasonable attorney's fees, and costs.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment against Trans Union for:

a. Actual damages under 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and

  c. Such other relief that this Court deems just and proper.

  d. Actual damages under 15 U.S.C. § 1681o(a)(1);

  e. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and

  f. Such other relief that this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendant's conduct, Plaintiff respectfully requests an entry of:

  a. Judgment against Defendant for maximum statutory damages

  b. Actual damages in an amount to be determined at trial;

  c. Compensatory damages in an amount to be determined at trial;

  d. Punitive damages in an amount to be determined at trial;

  e. An award of attorney's fees and costs; and

  f. Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

Respectfully submitted on November 6, 2024,

                 */s/ Thomas M. Bonan*
                 Thomas M. Bonan Esq.
                 Florida Bar No.: 118103
                 **SERAPH LEGAL, P. A.**
                 2124 W. Kennedy Blvd Ste. A
                 Tampa, Florida 33605
                 Tel: 813-567-1230 (Ext: 302)
                 Fax: 855-500-0705
                 TBonan@SeraphLegal.com